## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ROBERT M. ENCINIAS,**

     Plaintiff,

vs.                          Civ. No. 97-447 SC/DJS

**KENNETH S. APFEL,**
**Commissioner of Social Security,**[1]

     Defendant.


## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[2]

l.  Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits.  Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this matter for a rehearing.  The Court will review the Commissioner's

---

[1]  Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted therefore, for Acting Commissioner John J. Callahan as the Defendant in this suit.

[2]  Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2.    Plaintiff applied for disability insurance benefits and supplemental security income benefits on April 8, 1994 alleging disability since March 2, 1994 due to epilepsy, chronic back pain, dysthymic disorder, and atypical personality disorder. Tr. 13, 47, 163.    The applications were denied initially and on reconsideration.  Plaintiff requested and received a <u>de novo</u> review before an administrative law judge (ALJ).    A hearing was held before the ALJ at which Plaintiff and his attorney appeared and the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.    Tr. 21.    The Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. 4.   The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

3.    Plaintiff was born on September 27, 1957 and he completed the twelfth grade. Tr. 47, 106, 192. Plaintiff has past work experience as a dishwasher, laborer, truck driver, and janitor. Tr. 96, 101, 106, 176-177.

**Issues**

4.   Plaintiff alleges that the ALJ made three errors. Specifically Plaintiff claims that: (1) the ALJ erred when he found that Plaintiff's mental impairment is not severe at step two of the sequential evaluation; (2) the ALJ erred when he found that Plaintiff's subjective complaints, including pain, were not credible; and (3) the ALJ's step four analysis was improper.

**The Standard of Review**

5.   The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence.  Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion.  Id.  It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld.  However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied.  Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6.   The Plaintiff must first make a *prima facie* showing of an

impairment which effectively precludes him from returning to his past work.  Once that showing is made, the burden shifts to the Commissioner to show:  (1) that the Plaintiff, considering his age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.  To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that he is not engaged in substantial gainful employment;  (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities;  and (3) that his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that he has met or equaled a listing, he must show at step four that he is unable to perform work he had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his age, education, and prior work experience.  If a

4

determination of disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

8.   Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies.  20 C.F.R. §404.1566(d).  This aids the Commissioner in determining what specific job types exist in the national economy for the claimant.  To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity.  20 C.F.R. §§404.1545, 404.1563-.1565.  These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled.  20 C.F.R. §404.1569.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9.   Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination.  Id.  In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations.  Id.  If the claimant's nonexertional limitations are

5

significant enough to reduce further his or her work capacity, the
ALJ may not rely upon the grids but instead must give full
consideration to all relevant facts, including vocational expert
testimony if necessary, in determining whether the claimant is
disabled. Id.; <u>Channel v. Heckler</u>, 747 F.2d 577, 583 (10th Cir.
1984).  However, the mere presence of nonexertional impairments
does not automatically preclude reliance on the grids.  <u>Ray v.
Bowen</u>, 865 F.2d 222, 225 (10th Cir. 1989); <u>Gossett v. Bowen</u>, 862
F.2d 802, 807-08 (10th Cir. 1988); <u>Channel</u>, 747 F.2d at 582 n. 6.

**Discussion**

10.  Plaintiff failed to carry his burden in establishing
that he had a disabling impairment.  To qualify for benefits
Plaintiff must demonstrate, in accordance with the relevant portion
of Section 223(d) of the Act, 42 U.S.C. §423(d), that he is unable
to engage in substantial gainful activity due to a medically
determinable physical or mental impairment which can be expected to
result in death or has lasted or can be expected to last for at
least 12 months.  42 U.S.C. §416(1)(10).  The Act defines a
physical or mental impairment as one "that results from anatomical,
physiological or psychological abnormalities which are demonstrated
by medically acceptable clinical or laboratory diagnostic
techniques." 42 U.S.C. §423(d)(3). The Commissioners' regulations
require claimants to support their allegations through medically
acceptable clinical and diagnostic techniques.  20 C.F.R.

§404.1513.

11.  Plaintiff's arguments center around his alleged mental impairment.   Under the Commissioner's regulations, a mental impairment is not severe if it does not significantly limit a claimant's:

(2)  Capacities for seeing, hearing and speaking;

(3)  Understanding, carrying out, and remembering simple instructions;

(4)  Use of judgment;

(5)  Responding appropriately to supervision, co-workers and usual work situations; and

(6)  Dealing with changes in a routine work setting.   20 C.F.R. 416.921.

In this case, the medical records simply do not support Plaintiff's allegations.

12.  The substantial evidence supports the ALJ's decision that Plaintiff's mental impairment is not severe.   The record does not support otherwise.   Plaintiff did not allege any mental problems in his application of benefits.   Though this is not dispositive of the issue, it is evidence supporting the ALJ's decision. There are references to a possible psychological problem in the record. Appropriately, a consultative psychiatric examination was performed.   Dr. Balcazar, a psychiatrist, and the only psychiatrist of record, found that Plaintiff:

"might have adequate judgment to plan a work sequence.   From

7

a psychiatric standpoint, he could use tools and materials for
simple jobs, and he could perform one-or two-step repetitive
tasks at a competitive rate...It is possible that he could
have difficulty in his interaction with coworkers and
supervisory personnel." Tr. 163.

13. A Psychiatric Review Technique Form (PRT) was completed.
Tr. 63-72. Based on the record, the ALJ found that Plaintiff's
loss of function in the area of "daily living" was only slight.
The record supports that Plaintiff was able to care for his
personal needs, grooming and hygiene and was able to clean house,
wash dishes and do laundry. Tr. 16, 151, 181. Plaintiff was able
to drive a car. Tr. 110, 151. He also hiked, fished, bowled and,
camped for relaxation. Tr. 105.

14. The ALJ also found that Plaintiff was no more than
slightly limited in social functioning. In the record Plaintiff
stated on various reports that he visited friends and family weekly
or biweekly. He even had friends who would come over and help him
do the housework. He also stated that he had no problems getting
along with family, friends, neighbors or persons in authority.
When he had a disagreement with some, he stated that he tried to
work it out. Tr. 105, 111-113, 192.

15. The ALJ found that Plaintiff seldom had deficiencies in
"concentration, persistence and pace." Tr. 17. Plaintiff reported
in his application materials that he had worked in the past,
usually reported to work on time, had good attendance, was able to
keep up with his work and was able to concentrate for extended

8

periods of time.  Tr. 114.  Dr. Balcazar found that Plaintiff's
concentration was sufficient for one or two step repetitive tasks
at competitive rates.  Tr. 163.

16.  The ALJ found that Plaintiff had never experienced
episodes of deterioration or decompensation as described in Part B
Criteria.  Tr. 24.  It is important to note that this criterion
refers to repeated failure to adapt to stressful circumstances
which cause the individual either to withdraw from that situation
or to experience exacerbation of signs and symptoms.  20 C.F.R. Pt.
404, Subpt. P, App 1, §12.00(C)(4).  In his application, Plaintiff
stated he got along with people in authority.  He also stated that
his response to criticism was "fair" and that he had no difficulty
going out in public.

17.  Plaintiff is not and has never taken any medication for
any mental problem.  He has not sought treatment nor been referred
to treatment for any mental problem.  Plaintiff's statements alone
cannot support a finding of disability.  See Bernal v. Bowen, 851
F.2d 297, 300 (10th Cir. 1988).

18.  Plaintiff argues that Dr. Balcazar's report is incomplete
because it does not contain a mental assessment form.  The
regulations require a certain procedure for evaluation of mental
impairments "[W]hen there is evidence of a mental impairment that
allegedly prevents a claimant from working."  Cruse v. United
States Department of Health & Human Services, 49 F.3d 614 (10th
Cir. 1995); 20 C.F.R. §404.1520a.  The medical evidence of

Plaintiff's mental impairment is Dr. Hamilton's and Dr. Balcazar's consultative reports and Plaintiff's testimony.  Dr. Balcazar's opinion does not support a finding by the ALJ that the Plaintiff is disabled from working.  Dr. Balcazar's report specifically addressed plaintiff's ability to do work-related activities. Further, plaintiff did not point out any reason to expect that the results would be different with a mental assessment form as part of the record.

19.  The ALJ's observations qualify him to assess Plaintiff's credibility and find that his testimony lacks believability. <u>See Casias v. Secretary of Health & Human Services</u>, 933 F.2d 700, 801 (10th Cir. 1991).  In this case the ALJ specifically noted that Plaintiff "was able to attend closely to the proceedings without any noticeable signs of difficulty comprehending or outward manifestations of pain behavior."  Tr. 19.  Credibility determinations by an ALJ are generally binding upon review. <u>Gossett</u>, 862 F.2d at 807.  The factors considered by the ALJ that Plaintiff's pain was not disabling and his complaints were not credible include: (1) no allegation that pain caused plaintiff to stop work; (2) infrequent contacts with doctors; (3) no prescription medication taken for pain; (4) fishing, camping, bowling, hiking and bike riding as hobbies; (5) lack of objective medical evidence supporting severe physical condition; and (6) Plaintiff's statement that he could lift up to fifty pounds.  Tr. 17-19.  The ALJ also noted that Plaintiff's "work history has been

10

sporadic, which does not lend great credence to his subjective complaints, as this does not reflect a strong attachment to the labor force or motivation to return to work." Tr. 18.  Further, as noted by the ALJ, Plaintiff quit his last job not because of pain but because of perceived harassment from co-workers.  <u>Id</u>.

20.  The ALJ noted that the objective findings in this case were very limited and plaintiff's treatment had been intermittent and conservative.  Plaintiff had never seen a doctor for his back pain.  Tr. 14.  Plaintiff acknowledged that he had not seen a physician in more than a year.  Dr. Hamilton's consultative examination was ,for the most part, unremarkable for significant motor, sensory or neurological deficits.  Plaintiff's range of motion was no more than moderately limited.  Dr. Hamilton found no evidence of radiculopathy.

21.  Further, as discussed above, the Plaintiff engaged in vigorous daily activities.  The ALJ correctly noted that these did not support the presence of any significant physical impairment. Tr. 19.  The fact that Plaintiff did not use prescription medication for pain weakened his complaint of disabling pain.  <u>Luna v. Bowen</u>, 834 F.2d 161, 163 (10th Cir. 1987).

22.  The ALJ's statement that objective evidence did not confirm the severity of Plaintiff's alleges pain was not contrary to law.  Although a lack of objective corroboration of the pain's severity cannot justify disregarding allegations, it can affect the weight to be given to these allegations.  <u>Thompson v. Sullivan</u>, 987

F.2d 1482, 1488 (10th Cir. 1993).

23.  The ALJ made a proper analysis at step four of the sequential evaluation.  Plaintiff argues that the ALJ did not properly complete phases one and two of the residual functional capacity (RFC) determination as required by Winfrey v. Chater, 92 F.2d 1017, 1023 (10th Cir. 1996).  Plaintiff claims that the ALJ failed to consider his mental impairments and his allegations of pain.  Plaintiff claims his mental impairments caused impulsive outburst and violent behavior.  Plaintiff told Dr. Balcazar he had a tendency toward outbursts and violent behavior.  This statement is based on Plaintiff's self reporting and there is nothing in the record other than Plaintiff's own statement.  Further, as discussed above, the ALJ considered Plaintiff's allegations of pain.

24.  Regarding Plaintiff's other contentions, testimony of a vocational expert is not required at step four.  Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994).  Further, the evidence does not show that Plaintiff's past relevant work as a dishwasher involved any of the limitations or restrictions found by the ALJ.  Tr. 20-21.

25.  The Court notes that there are some inconsistencies in the record.  The evidence is far from being uncontroverted as Plaintiff argues.  The ALJ correctly resolved these inconsistencies in the record.  Diaz v. Chater, 55 F.3d 300 (7th Cir. 1995).

**Recommended Disposition**

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
Don J. Svet
UNITED   STATES   MAGISTRATE   JUDGE